2000 ND 139

**David F. MEAD and Marlene Mead, Co-conservators for Robert D. Mead; Pauline Mead a/k/a Elaine Mead; and Jackie Wolf, Trustee for the Jessica Mead and Justin Mead and Three Affiliated Tribes of Mandan–Hidatsa–Arikara Trust, Plaintiffs and Appellants,**

v.

**FARMERS UNION MUTUAL INSURANCE COMPANY, Defendant and Appellee.**

**No. 20000046.**

Supreme Court of North Dakota.

July 7, 2000.

Vince H. Ficek, Ficek & Buresh, P.C., Dickinson, N.D., for plaintiffs and appellants.

Steven A. Storslee, Storslee Law Firm, Bismarck, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] David F. Mead and Marlene Mead, co-conservators for Robert D. Mead; Pauline Mead, also known as Elaine Mead; and Jackie Wolf, trustee for the Jessica Mead and Justin Mead and Three Affiliated Tribes of Mandan–Hidatsa–Arikara Trust ("the Meads") appeal from a summary judgment of dismissal of the Northwest Judicial District Court. We affirm, concluding the issues of whether Robert Mead was competent and whether he acted intentionally in shooting Keith Braddock are res judicata, and thus Farmers Union Mutual Insurance Company ("Farmers Union") did not have a duty to defend or indemnify the Meads in the resulting wrongful death suit.

I

[¶ 2] On March 20, 1996, Robert Mead shot and killed Officer Keith Braddock in Watford City. Mead was charged with murder, felonious restraint, and terrorizing. On April 3, 1996, after Robert Mead's initial appearance, the district court ordered he be evaluated by a psychiatrist or a licensed psychologist.

[¶ 3] On April 24, 1996, Dr. Dennis Kottke, a psychiatrist at the North Dakota State Hospital, submitted his psychiatric evaluation of Robert Mead to the court. Dr. Kottke wrote, "It is our impression that the patient is not mentally ill, does not have a frank mental disorder although he clearly has a lot of paranoid and distrustful features.... He is thus felt fit to proceed with the trial." Robert Mead did not contest Dr. Kottke's evaluation.

[¶ 4] Robert Mead acted as his own counsel throughout the criminal proceedings, although a court-appointed attorney served as standby counsel. At trial, Robert Mead did not deny he shot Keith Braddock, but argued he shot him in self-defense. Self-defense was the only defense Robert Mead presented to the jury. The jury found him guilty as charged.

[¶ 5] By a complaint dated July 5, 1996, Mary Braddock brought suit against Robert Mead for the wrongful death of Keith Braddock, her husband. On August 13, 1996, Robert Mead created a trust, calling it the Jessica Mead and Justin Mead and Three Affiliated Tribes of Mandan–Hidatsa–Arikara Trust. Robert Mead named Jackie Wolf as trustee.

[¶ 6] On December 26, 1996, the court appointed David F. Mead and Marlene Mead as co-conservators for Robert Mead, based on his incarceration at the North Dakota State Penitentiary. On April 9, 1997, the district court appointed David F. Mead and Marlene Mead "as Guardian Ad Litem to represent Robert D. Mead in the above entitled action while he is confined and detained in the North Dakota State Penitentiary."

[¶ 7] Robert Mead was deposed and stated he intentionally shot Keith Braddock in self-defense. At the time of the shooting, Robert Mead had a farm liability policy through Farmers Union. The policy contained an exclusion for intentional acts committed by the insured. Farmers Union denied coverage for the Braddock suit.

[¶ 8] David F. Mead and Marlene Mead defended the civil suit and entered into a stipulation for judgment under which Robert Mead, "through his family members," paid a settlement to the Braddocks. According to the complaint in the present action, Pauline Mead provided $60,000 of the settlement money and Jackie Wolf, as trustee for the Jessica Mead and Justin Mead and Three Affiliated Tribes of Mandan–Hidatsa–Arikara Trust, provided $40,000 of the settlement funds. David F. Mead and Marlene Mead paid the costs of defending the suit.

[¶ 9] The Meads now bring this action against Farmers Union, seeking reimbursement for the settlement amounts and attorney's fees. They allege Robert Mead is mentally ill and therefore incapable of committing an intentional act.

[¶ 10] On August 30, 1999, Farmers Union moved for summary judgment. The district court granted the motion, and the Meads appealed.

[¶ 11] The Meads' appeal was timely under N.D.R.App.P. 4(a). The district court had jurisdiction under N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

II

[¶ 12] Summary judgment is a method for promptly and expeditiously disposing of a controversy, without trial, if either party is entitled to a judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual issues would not alter the results. *Engel v. Montana Dakota Utils.*, 1999 ND 111, ¶ 6, 595 N.W.2d 319 (citing *Perry Ctr., Inc. v. Heitkamp*, 1998 ND 78, ¶ 12, 576 N.W.2d 505).

[¶ 13] Rule 56(c), N.D.R.Civ.P., provides summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." "On appeal, we review the evidence in the light most favorable to the party opposing the summary judgment motion." *Engel*, 1999 ND 111, ¶ 6, 595 N.W.2d 319 (citing *Freed v. Unruh*, 1998 ND 34, ¶ 6, 575 N.W.2d 433).

A

[¶ 14] In its opinion granting Farmers Union's motion, the district court held:

[w]hen the jury in *State v. Robert Mead* returned its verdict finding Mead guilty of murder, Class AA Felony, it necessarily determined that he acted with the intent required for the commission of that offense—that is, that he acted intentionally (or knowingly) when he fired the shot that killed Keith Braddock.

The district court concluded the criminal judgment "is res judicata as to the issue of intent and that the Plaintiffs are collaterally estopped from re-litigating that issue."

[¶ 15] On appeal, the Meads argue their claim against Farmers Union is not barred by res judicata or collateral estoppel. "Res judicata means that a valid, existing final judgment from a court of competent jurisdiction is conclusive, with regard to the issues raised, or those that could have been raised, and determined therein, as to the parties and their privies in all other actions." *Ohio Cas. Ins. Co. v. Clark*, 1998 ND 153, ¶ 23, 583 N.W.2d 377 (quoting *Peacock v. Sundre Township*, 372 N.W.2d 877, 878 (N.D.1985)). Collateral estoppel "forecloses the relitigation, in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit." *Ohio Cas. Ins. Co.*, at ¶ 23 (citation omitted).

### 1

■ [¶ 16] The Meads claim the district court erred in granting Farmers Union's motion for summary judgment because there are genuine issues of material fact "regarding the negligence of Keith Braddock vs. the negligence of Robert, and the state of mind or mental illness of Robert." They argue that Robert Mead was incompetent to defend himself at his criminal trial and that a fact question exists as to whether his waiver of counsel at trial "was knowing and intelligent given his mental condition." In addition, the Meads argue there was no evidence presented to the jury in Robert Mead's criminal case regarding his mental condition or Keith

Braddock's allegedly improper procedures and actions.

[¶ 17] In *Ohio Casualty Insurance Co. v. Clark*, we held there were no genuine issues of material fact regarding Daniel Clark's intent in shooting George Girodengo because a jury had previously found the shooting was an intentional act. 1998 ND 153, ¶¶ 12, 28, 583 N.W.2d 377. Following Clark's criminal trial, Girodengo's family sued Clark for wrongful death. *Id.* at ¶¶ 2–3. Ohio Casualty Insurance Company, which had issued a homeowner's insurance policy to Clark, provided him a defense in the civil suit. *Id.* at ¶ 4.

[¶ 18] Ohio Casualty Insurance Company, however, brought an action for a declaratory judgment, arguing the shooting was excluded from coverage. *Ohio Cas. Ins. Co.*, 1998 ND 153, ¶ 4, 583 N.W.2d 377. Thus, Ohio Casualty Insurance Company claimed it owed no duty to defend or indemnify Clark in the civil suit. *Id.* We held that Clark's killing was an intentional act for which insurance coverage was excluded, both because there was an intentional act exclusion and for public policy reasons. *Id.* at ¶¶ 17, 28, 30.

[¶ 19] In *Poole v. State Farm Fire & Casualty Co.*, which we cited with approval in *Ohio Casualty Insurance Co. v. Clark*, William Poole, insured by State Farm Fire & Casualty Company, was convicted of first-degree murder after a trial in which he did not specifically assert the insanity defense. 941 F.Supp. 964, 965 (D.Colo. 1996); *see* 1998 ND 153, ¶ 27, 583 N.W.2d 377. Poole was then sued for wrongful death, and a declaratory judgment was sought to determine whether State Farm was required to defend and indemnify him. *Poole*, at 965. The court in *Poole* held that a finding "beyond a reasonable doubt that one acted with deliberative intent necessarily negates questions of diminished mental capacity and legal insanity." *Id.* at 968.

### 2

[¶ 20] The facts of the present case are very similar to *Ohio Casualty Insurance Co.* and *Poole.* Thus, under *Ohio Casualty Insurance Co.,* we conclude the district court correctly determined there were no genuine issues of material fact. 1998 ND 153, 583 N.W.2d 377. The issues of whether Robert Mead was competent and whether he acted intentionally in shooting Keith Braddock were raised, litigated, and determined in Robert Mead's criminal case. Therefore, the district court did not err in granting Farmers Union's motion for summary judgment.

### B

[¶ 21] The Meads further argue Farmers Union breached its duty of good faith and fair dealing by failing to defend the Meads in the Braddock suit. An insurer generally "has a duty to defend an underlying action against its insured if the allegations in the complaint give rise to potential liability or a possibility of coverage under the insurance policy." *Ohio Cas. Ins. Co. v. Clark,* 1998 ND 153, ¶ 8, 583 N.W.2d 377 (quoting *Nodak Mut. Ins. Co. v. Heim,* 1997 ND 36, ¶ 11, 559 N.W.2d 846). Section 26.1–32–04, N.D.C.C., provides that "[a]n insurer is not liable for a loss caused by the willful act of the insured, but the insurer is not exonerated by the negligence of the insured or of the insured's agents or others."

[¶ 22] Because Robert Mead's policy with Farmers Union contained an exclusion of liability for intentional acts and because the issue of whether Robert Mead acted intentionally when he shot and killed Keith Braddock is res judicata, the district court did not err in ruling Farmers Union had no duty to defend Robert Mead in the Braddock suit.

### III

[¶ 23] The judgment of dismissal of the district court is affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., WILLIAM F. HODNY, S.J., concur.

[¶ 25] WILLIAM F. HODNY, S. J., sitting in place of KAPSNER, J., disqualified.